**NOT FOR PUBLICATION**

```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
```

|  |  |
|---|---|
| BRADLEY C. PETERSON, | : |
|  | : |
| Plaintiff, | :  Civil Action: 12-865 (RBK) |
|  | : |
| v. | :  **O P I N I O N** |
|  | : |
| CHRISTOPHER HOLMES, et al., | : |
|  | : |
| Defendants. | : |

**APPEARANCES**:

Bradley C. Peterson, <u>Pro Se</u>
#408612
South Woods State Prison
215 Burlington Road South
Bridgeton, NJ 08302

**KUGLER, District Judge**

   Plaintiff, Bradley C. Peterson, currently incarcerated at the South Woods State Prison, Bridgeton, New Jersey, seeks to bring this action alleging constitutional violations <u>in forma pauperis</u>, without prepayment of fees.  Based on Plaintiff's affidavit of indigence and institutional account statement, the Court will grant his application to proceed <u>in forma pauperis</u>, pursuant to 28 U.S.C. § 1915(a) and order the Clerk of the Court to file the complaint.

   At this time, the Court must review the complaint pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks

monetary relief from a defendant who is immune from such relief. For the following reasons, Plaintiff's complaint will be dismissed, without prejudice.

## BACKGROUND

Plaintiff seeks to sue various employees of the South Woods State Prison, including Administrator Christopher Holmes, Assistant Administrator Judith Gentile, Inmate Remedy Coordinator Valerie Farrow, Education Department Supervisor Rosellen Muniah, Supervisor of the Medical Department Lynn Kwap, Inmate Property Inspector John Doe, Business Office Manager Charlotte Chance, and Lieutenant Davidson.  (Complt., ¶ 4).  He seeks monetary and other relief "for blatant destruction of property, withholding of property, denial of access to the courts, due process of complaint forms, non-scheduling of routine reviews, lack of medical treatment, degradation of strip searches, etc."  (Complt. ¶ 7).

In his Statement of Claims, (Complt., ¶ 6), Plaintiff states that:

- Upon arrival at South Woods State Prison on July 19, 2011, Plaintiff's property (a radio) was withheld until July 25, 2011.  When he received his radio, it was inoperable. Plaintiff surmises that John Doe defendant tampered with the radio.

- Defendant Holmes denied Plaintiff's request for compensation or replacement of the radio, and denied Plaintiff his television without valid reason.

- Three to six times a week he was strip searched with "psychological degradation."
- The Legal Department refused to allow Plaintiff to make legal calls on a weekly basis. Plaintiff was denied access to the inmate paralegal assistance program, as well as access to law books.
- Plaintiff's inmate remedy forms were either delayed or not processed from October to December of 2011.
- Plaintiff did not receive adequate medical treatment, and are "running a fraudulent medical co-pay scam." Plaintiff states that "Complaints regarding ongoing pain are ignored until more serious signs of ailments are present." Plaintiff states that he prefers an early diagnosis to treat medical diseases, and that his health is jeopardized.
- Plaintiff's inmate account statements have been withheld.
- Plaintiff states that Lt. Davidson denied him property on January 22, 2011 for three days in an attempt "to provoke and incite anger" causing him emotional distress and sleep deprivation.

(Complt., ¶ 6).

On June 15, 2012, Plaintiff filed a letter detailing his medical issues more fully (docket entry 2) and seeking to add William Briglia, D.O. at South Woods State Prison, as a defendant. Plaintiff states that he has made complaints about pain, and the doctor is ignoring the seriousness of his claims, although the

facility deducts a co-payment from his account. Plaintiff claims that his medication has been discontinued, and he has been given a "placebo" that is ineffective. (Letter, p. 2). He contends that he has records demonstrating that he is at risk for chronic kidney disease, increased risk for diabetes, and high cholesterol. He argues that Dr. Briglia is ignoring his health issues, and claiming Plaintiff "has nothing to worry about." (Letter, p. 3).

## DISCUSSION

### A.  Standards for a *Sua Sponte* Dismissal

The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996), requires a district court to review a complaint in a civil action in which a prisoner is proceeding in forma pauperis or seeks redress against a governmental employee or entity. The Court is required to identify cognizable claims and to sua sponte dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. See 28 U.S.C. §§ 1915(e)(2)(B) and 1915A. This action is subject to sua sponte screening for dismissal under both 28 U.S.C. § 1915(e)(2)(B) and § 1915A.

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff. See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007)

(following Estelle v. Gamble, 429 U.S. 97, 106 (1976); see also United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).

The Supreme Court refined the standard for summary dismissal of a complaint that fails to state a claim in Ashcroft v. Iqbal, 556 U.S. 662 (2009). The Court examined Rule 8(a)(2) of the Federal Rules of Civil Procedure which provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Citing its opinion in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) for the proposition that "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555), the Supreme Court held that, to prevent a summary dismissal, a civil complaint must now allege "sufficient factual matter" to show that the claim is facially plausible. This then "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Fowler v. UPMC Shadyside, 578 F.3d 203 (3d Cir. 2009) (citing Iqbal, 556 U.S. at 676). The Supreme Court's ruling in Iqbal emphasizes that a plaintiff must demonstrate that the allegations of his complaint are plausible. See id. at 678-79; see also Twombly, 505 U.S. at 555, & n.3; Warren Gen. Hosp. v. Amgen Inc., 643 F.3d 77, 84 (3d Cir. 2011). "A complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." Fowler, 578 F.3d at 211 (citing

Phillips v. County of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008).

**B.    Section 1983 Actions**

Plaintiff brings this action pursuant to 42 U.S.C. § 1983. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ....

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law.  See West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994). See also Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

**C.    Analysis**

    1.   Medical Care Claims

Plaintiff asserts that the he has been denied proper medical care because his complaints of pain are not being taken seriously, and he is not receiving the medication he prefers, but is receiving an ineffective placebo instead.

6

The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care.  See Estelle v. Gamble, 429 U.S. 97, 103-04 (1976); Rouse v. Plantier, 182 F.3d 192 (3d Cir. 1999).  In order to set forth a cognizable claim for a violation of his right to adequate medical care, an inmate must allege: (1) a serious medical need; and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need.  See Estelle, 429 U.S. at 106; Natale v. Camden County Correctional Facility, 318 F.3d 575, 582 (3d Cir. 2003).

To satisfy the first prong of the Estelle inquiry, the inmate must demonstrate that his medical needs are serious. "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'"  Hudson v. McMillian, 503 U.S. 1, 9  (1992).  The Third Circuit has defined a serious medical need as: (1) "one that has been diagnosed by a physician as requiring treatment;" (2) "one that is so obvious that a lay person would recognize the necessity for a doctor's attention;" or (3) one for which "the denial of treatment would result in the unnecessary and wanton infliction of pain" or "a life-long handicap or permanent loss."  Atkinson v. Taylor, 316 F.3d 257, 272-73 (3d Cir. 2003) (internal quotations and citations omitted); see also Monmouth County

7

Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987), cert. denied, 486 U.S. 1006 (1988).

The second element of the Estelle test requires an inmate to show that prison officials acted with deliberate indifference to his serious medical need. See Natale, 318 F.3d at 582 (finding deliberate indifference requires proof that the official knew of and disregarded an excessive risk to inmate health or safety). "Deliberate indifference" is more than mere malpractice or negligence; it is a state of mind equivalent to reckless disregard of a known risk of harm. See Farmer v. Brennan, 511 U.S. 825, 837-38 (1994). Furthermore, a prisoner's subjective dissatisfaction with his medical care does not in itself indicate deliberate indifference. See Andrews v. Camden County, 95 F. Supp.2d 217, 228 (D.N.J. 2000). Similarly, "mere disagreements over medical judgment do not state Eighth Amendment claims." White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990). "Courts will disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment ... [which] remains a question of sound professional judgment." Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) (internal quotation and citation omitted). Even if a doctor's judgment concerning the proper course of a prisoner's treatment ultimately is shown to be mistaken, at most what would be proved is medical malpractice and not an Eighth Amendment violation. See Estelle, 429 U.S. at 105-06; White, 897 F.3d at 110.

The Third Circuit has found deliberate indifference where a prison official: (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment for non-medical reasons; or (3) prevents a prisoner from receiving needed or recommended treatment.  See Rouse, 182 F.3d at 197.  The court also has held that needless suffering resulting from the denial of simple medical care, which does not serve any penological purpose, violates the Eighth Amendment.  See Atkinson, 316 F.3d at 266. See also Monmouth County Correctional Institutional Inmates, 834 F.2d at 346 ("deliberate indifference is demonstrated '[w]hen ... prison authorities prevent an inmate from receiving recommended treatment for serious medical needs or deny access to a physician capable of evaluating the need for such treatment.'"); Durmer v. O'Carroll, 991 F.2d 64 (3d Cir. 1993); White v. Napoleon, 897 F.2d 103 (3d Cir. 1990).

Here, Plaintiff's vague allegations of "pain," do not pass Iqbal's sua sponte screening plausibility requirement, because he has not pled a "serious medical need."  However, even assuming Plaintiff's pain is a serious medical need, Plaintiff has not sufficiently pled deliberate indifference.  Plaintiff's allegations in the complaint and supplemental letter show that he has seen doctors for his complaints and has been placed on medication, and told "not to worry."  Plaintiff's dissatisfaction with his treatment, at best, could show medical malpractice or

9

medical negligence, which are not actionable claims under § 1983. See Estelle, 429 U.S. at 105-06; White, 897 F.3d at 110 (even if a doctor's judgment concerning the proper course of a prisoner's treatment ultimately is shown to be mistaken, at most what would be proved is medical malpractice and not an Eighth Amendment violation).

Because it is possible that Plaintiff could provide additional facts to support a claim as to his medical issues, however, this Court will dismiss this denial of medical care claims, without prejudice, for failure to state a claim, pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

2. Property Claims

Next, Plaintiff asserts that his property was tampered with prior to his receiving it at South Woods, and that he was denied possession of his television.

An unauthorized deprivation of property by a state actor, whether intentional or negligent, does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available. See Hudson v. Palmer, 468 U.S. 517, 530-36 (1984); Parratt v. Taylor, 451 U.S. 527, 543-44 (1981), overruled in part on other grounds, Daniels v. Williams, 474 U.S. 327, 328 (1986). In Logan v. Zimmerman Brush Co., 455 U.S. 422, 435-36 (1982), the Supreme Court explained, however, that post-deprivation remedies do not satisfy the Due Process Clause if

10

the deprivation of property is accomplished pursuant to established state procedure rather than through random, unauthorized action.

Here, if the action of the Defendants was unauthorized, Plaintiff has failed to state a claim because New Jersey does provide a post-deprivation remedy for unauthorized deprivation of property by public employees. See New Jersey Tort Claims Act, N.J. Stat. Ann. §§ 59:1-1, et seq. (2001).  In addition, as Plaintiff admits, he had an administrative grievance procedure available to him.  Plaintiff has alleged no facts suggesting that Defendants deprived him of property pursuant to an established state procedure, nor has this Court located any such established procedure.  To the contrary, established state procedures require prison officials to preserve personal property of inmates.  See, e.g., N.J. Admin. Code §§ 10A:1-11.1, et seq. (2001).

Plaintiff's property claims must be dismissed for failure to state a claim upon which relief may be granted, pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b).

   3.   Legal Access Claims

Plaintiff states that he has been denied access to legal materials and the inmate paralegal, and that he has been denied his right to make legal phone calls.

The right of access to the courts derives from the First Amendment right to petition and the due process clauses of the Fifth and Fourteenth Amendments.  The right of access to the

11

courts requires that "adequate, effective, and meaningful" access be provided to inmates wishing to challenge their criminal charge, conviction, or conditions of confinement.  See Bounds v. Smith, 430 U.S. 817, 822 (1977).  Prison officials must "give prisoners a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the Courts." Id. at 825.

However, as the Supreme Court explained:

> ... Bounds does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

Lewis v. Casey, 518 U.S. 343, 355 (1996).

Moreover, a prisoner alleging a violation of the right of access must show that prison officials caused previous or imminent "actual injury" by hindering efforts to pursue such a claim or defense.  See Lewis, 518 U.S. at 348-51, 354-55; Oliver v. Fauver, 118 F.3d 175, 177-78 (3d Cir. 1997).  As the Supreme Court directed:

> [The inmate] might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known. Or that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable to file even a complaint.

Lewis, 518 U.S. at 351.

Here, Plaintiff fails to allege any actual injury due to the alleged denial of access to the courts. He does not allege that he was unable to file this or any other complaint in the courts, or that any court cases were dismissed because he did not have timely access to the courts. He has not provided any facts as to how Defendants' actions have affected his ability to pursue any legal claims. Thus, the allegations in the Complaint are too conclusory to show a denial of court access sufficient to rise to the level of a constitutional deprivation under the Iqbal pleading standard.

Furthermore, Plaintiff's claims regarding denial of legal calls are also without merit, as pled. Inmates' ability to communicate with their lawyers is protected by their constitutional right of access to the courts and may implicate the Sixth Amendment right to assistance of counsel in criminal proceedings. See Aswegan v. Henry, 981 F.2d 313 (8th Cir. 1992) (analyzing telephone use as access-to-courts issue).

However, it is established that a prisoner "has no right to unlimited telephone use." Washington v. Reno, 35 F.3d 1093, 1100 (6th Cir. 1994) (quoting Benzel v. Grammer, 869 F.2d 1105, 1108 (8th Cir. 1989)). Rather, an inmate's telephone access is "subject to rational limitations in the face of legitimate security interests of the penal institution." Id. (quoting Strandberg v. City of Helena, 791 F.2d 744, 747 (9th Cir. 1986)). Correspondingly, an inmate's right to communicate even with

13

his/her legal counsel is not unlimited.  See <u>Ingalls v. Florio</u>, 968 F. Supp. 193, 203-04 (D.N.J. 1997) ("[L]imited access to telephone calls ... is not a constitutional violation so long as inmates can communicate with their counsel in writing or in person by visits."); <u>Aswegan</u>, 981 F.2d at 314 (upholding a state penitentiary's policy of prohibiting prisoners from making toll-free telephone calls, even to their attorneys, because the prisoners had alternative methods of exercising the right to access the courts, and had not alleged any irreparable harm or prejudice from the policy).  Hence, if an inmate has an alternative method to communicate freely and privately with his counsel, it is less likely that the restrictions on telephone use will rise to the level of a constitutional violation.  See <u>Ingalls</u>, 968 F. Supp. at 203-04; <u>Aswegan</u>, 981 F.2d at 314.

> In sum:
>
> three questions relevant to issue of telephone access to counsel and the courts are (1) whether [the prisoner] has alleged facts giving rise to an inference that no legitimate penological interest was served by the ... Defendants' actions, (2) whether he has sufficiently alleged that the ... Defendants' actions caused him an 'actual injury,' and (3) whether he had alternative avenues through which he could communicate with his attorneys and the courts.

<u>Aruanno v. Main</u>, 2010 WL 251590 at *10 (D.N.J. Jan. 15, 2010).

Here, Plaintiff has failed to allege any injury he suffered as a result of his inability to call his attorney.  Nor does Plaintiff allege that he was prevented from communicating with the

14

attorney via alternative avenues such as in writing and in-person visits.

Based on the foregoing, Plaintiff's denial of legal access and legal phone call claims will also be dismissed, without prejudice.

### 4. Claims Regarding Grievances

Plaintiff complains that his grievances were ignored or not processed.

"[T]he First Amendment does not impose any affirmative obligation on the government to listen, to respond or ... to recognize [a grievance]." Smith v. Arkansas State Highway Emp., Local 1315, 441 U.S. 463, 465 (1979); Minnesota State Bd. Community Colleges v. Knight, 465 U.S. 271, 285 (1984) ("Nothing in the First Amendment or in this Court's case law interpreting it suggests that the rights to speak, associate, and petition require government policymakers to listen or respond to individuals' communications").

Alternatively, construing these challenges as due process claims, they would also be subject to dismissal as facially meritless. "Prisoners are not constitutionally entitled to a grievance procedure and the state creation of such a procedure does not create any federal constitutional rights." Wilson v. Horn, 971 F. Supp. 943, 947 (E.D. Pa. 1997). "Thus, a failure to respond to an inmate's grievances "does not violate his rights to due process and is not actionable." Stringer v. Bureau of

Prisons, 145 F. App'x 751, 753 (3d Cir. 2005) (citing Antonelli v. Sheahan, 81 F.3d 1422, 1430 (7th Cir. 1996)).

These claims must be dismissed for failure to state a claim upon which relief may be granted.

5.   Strip Search Claims

Finally, Plaintiff inserts a vague allegation in his Statement of Claims: "strip searches/psychological degradation 3-6 times a week."  (Complt., ¶ 6).

Inmates do not have a Fourth Amendment right to be free of strip searches, which may be conducted by prison officials without probable cause provided that the search is conducted in a reasonable manner. See Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979); Ostrander v. Horn, 145 F. Supp.2d 614, 620 (M.D. Pa. 2001). "Maintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights."  Bell, 441 U.S. at 546.  As such, the alleged infringement of a prisoner's constitutional rights must be evaluated in the light of the central objective of prison administration, safeguarding institutional security.  See id. Prison officials should be accorded "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Bell, 441 U.S. at 547; see also Florence v. Bd. of Chosen Freeholders of Cnty. of Burlington,

16

566 U.S. ----, 132 S. Ct. 1510, ---L.Ed.2d ----, 2012 WL 1069092, at *7 (2012).  "[I]n the absence of substantial evidence in the record to indicate that the [prison] officials have exaggerated their response to [legitimate security interests,] courts should ordinarily defer to their expert judgment in such matters."  Bell, 441 U.S. at 548 (citation omitted); Florence, --- U.S. ----, at ----, 132 S.Ct. 1510, ---L.Ed.2d ----, at ----, 2012 WL 1069092, at *7 (same).

Thus, in the context of the Fourth Amendment, courts must conduct a balancing of the need for a particular search against the invasion of personal rights that the search entails.  "Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted."  Bell, 441 U.S. at 559. Strip searches that are excessive, vindictive, harassing, or unrelated to any legitimate penological interest may violate the Fourth Amendment. See e.g. Michenfelder v. Sumner, 860 F.2d 328, 332 (9th Cir. 1988).

Here, Plaintiff does not allege facts, sufficient under the Iqbal pleading standard, to demonstrate any constitutional wrongs with regard to the alleged strip searches.  This claim will be dismissed, without prejudice.

## CONCLUSION

Therefore, for the reasons set forth above, the Complaint will be dismissed without prejudice, in its entirety, pursuant to

17

both 28 U.S.C. §§ 1915(e)(2) (B)(ii) and 1915A(B)(1). An appropriate order follows.

s/Robert B. Kugler
ROBERT B. KUGLER
United States District Judge

Dated: November 5, 2012